UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------X
JAMAICA HOSPITAL MEDICAL
CENTER, INC., et al.,

        Plaintiffs,                                07 CV 506 (SJ) (JO)

        v.

                                                    MEMORANDUM
                                                    AND ORDER

UNITED HEALTH GROUP, INC., et al.,

        Defendants.

-----------------------------------------------X

APPEARANCES
OHRENSTEIN & BROWN
One Penn Plaza, 46th Floor
New York, NY 10119
By:    Michael Brown
Counsel for Plaintiffs

WEIL, GOTSHAL AND MANGES, LLP
767 Fifth Avenue
New York, NY 10153
By:    Mindy J. Spector
Counsel for Defendants

JOHNSON, Senior District Judge:

        On February 2, 2007, plaintiffs Jamaica Hospital Medical Center, Inc. ("Jamaica Hospital") and Flushing Hospital Medical Center, Inc., ("Flushing Hospital") (collectively "Plaintiffs" or the "Hospitals") filed the instant complaint ("Complaint") against defendants United Health Group, Inc. ("UHG"), Oxford Health Plan (NY), Inc. ("Oxford-NY"); Oxford Health Insurance, Inc. ("Oxford");

1

United Health Care of New York, Inc. ("UHC"); United Health Care Insurance Company of New York ("UHC-NY"); as well as certain employees of these entities, some named individually, and others identified as "John Does 1-50" (collectively "Defendants"). Plaintiffs' Complaint alleges that Defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 (a) – (d), by adopting or encouraging various fraudulent practices aimed at maximizing the profits they gained for services provided by the Hospitals to patients. The Complaint also alleged related causes of action under state law. (Complaint ¶¶ 107-166.)

Defendants, on June 28, 2007, filed a motion requesting that the Court abstain from asserting jurisdiction, pursuant to Colorado River Water Conservation District v. United States, 424 U.S. 800, 814 (1976). In the alternative, Defendants move to compel arbitration of the instant matter, or, as a final alternative, to stay the matter pending the arbitration already compelled by an order in a related action filed by Plaintiffs against a smaller subset of Defendants in New York state court. Additionally, the Court is in receipt of several motions for leave to appear as *amicus curiae* (the "*Amicus* Motions"), each opposed by Defendants. Finally, under consideration by this Court is a motion to intervene, brought by non-party United Policyholders. Based on the submissions of the parties, as well as the non-parties, and for the reasons stated below

Defendants' motion to abstain is DENIED;

Defendants' motion to compel arbitration or stay the instant action is GRANTED in part and DENIED in part;

The *Amicus* Motions are DENIED; and

United Policyholder's motion to intervene is DENIED.

This memorandum briefly summarizes the claims and issues before this Court.

I. Facts and Procedural History

On April 12, 2006, Plaintiffs filed an action in state court against Oxford and Oxford-NY, UHC and UHC-NY (the "State Court Defendants"), alleging breaches of various contracts for Plaintiffs' provision of medical services to patients, in exchange for Defendants' payment therefor. Plaintiffs also alleged causes of action for Breach of the Covenant of Good Faith and Fair Dealing, Fraud, Unjust Enrichment, and violations of both New York Human Rights Law and New York's General Business law. (Spector Decl. Ex. 2 (Plaintiffs' Amended Complaint (the "State Court Complaint")).)

The gravamen of the state court action was that the State Court Defendants prevented Plaintiffs from terminating prior contracts with them; made misrepresentations during the discussions leading up to the expiry of the prior contracts; and negotiated their agreements improperly, unfairly, and unlawfully, by, *inter alia*, reducing the rates Plaintiffs would ultimately receive for various patient services provided at the Hospitals and denying Plaintiffs' "in-network" status. (See

generally State Court Complaint.) Plaintiffs alleged that UHG's subsidiaries, including Oxford "have been allowed, if not encouraged by UHG [a non-party to the state court action] to engage in a widespread course of 'rogue' conduct to improve UHGs profits." (See, e.g., State Court Complaint ¶ 48.) Plaintiffs alleged a pattern of conduct involving each Defendant and alleged that Defendants acted in concert to minimize payments due to Plaintiffs under their agreements. (State Court Complaint ¶¶ 17-53.) These acts, Plaintiffs alleged, result in Plaintiffs' inability to properly serve the communities in which they operate. (State Court Complaint ¶¶ 3, 45.)

On August 9, 2006, the State Court Defendants moved the state court to dismiss the action or compel arbitration under the agreements between themselves and Plaintiffs. The motion was granted on January 24, 2007, pursuant to the mandatory arbitration clauses contained both in the agreement between Jamaica Hospital and Oxford-NY, (Spector Decl. Ex. 4), and the agreement between Flushing Hospital and defendant Oxford-NY. (Spector Decl. Ex. 5.) The arbitration clauses read as follows:

> [N]o civil action concerning any dispute arising under this Hospital Agreement shall be instituted before any court and all such disputes shall be submitted to final and binding arbitration in New York, pursuant to the rules of the American Arbitration Association with one arbitrator. . .Proceeding to arbitration and obtaining an award thereunder shall be a condition precedent to the bringing or maintaining of any action in any court with respect to any dispute arising under this Hospital Agreement, except for the institution of a civil action to maintain the status quo during the pendency of any arbitration proceeding.

4

(Spector Decl. Exs. 4, 5 at ¶ 11.3.)

Plaintiff then filed a motion to renew its opposition to the State Court Defendants' motion, citing the discovery of new information, including, *inter alia*, (1) documents obtained from a Freedom of Information Law request by the New York State Department of Health, finding UGH to have inaccurately reported the network status of providers; (2) a consent decree entered into between United-NY and the Attorney General of the State of New York in which United-NY admitted to repeatedly providing false information regarding the in-network status of service providers; (3) and a petition filed by the Nebraska Department of Insurance charging certain Defendants with violations of various insurance laws. (Complaint ¶¶ 10-14.)

While that motion was pending, Plaintiffs filed suit in this Court, asserting jurisdiction under RICO, along with claims of violations of the same state laws invoked in the State Court Complaint. The instant action names all of the State Court Defendants, and additionally, names UHC-NY, and individual defendants William McGuire, Paul Conlin, Paul Crespi, Dana D'Elia, and "John Does 1-50," (the "Additional Defendants"). Plaintiffs' motion to renew was denied in state court on May 24, 2007. The instant motions followed.

5

P-049

## II. Discussion

### A. *Colorado River Abstention*

"The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." Colorado River, 424 U.S. at 814. Given "the virtually unflagging obligation of the federal courts" to exercise jurisdiction where warranted, a defendant seeking abstention faces a heavy burden. See Sheerbonnet v. American Express Bank, Ltd., 17 F.3d 46, 49 (2d Cir. 1994). In general, abstention is appropriate in three highly specific situations involving concurrent state and federal proceedings: (1) where a federal question stands to be mooted by resolution of a state law issue, as articulated in Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496 (1941); (2) where federal jurisdiction would disrupt a state's attempt to establish a consistent policy in an area of great public concern, under Burford v. Sun Oil Co., 319 U.S. 315 (1943); (3) or where federal jurisdiction serves to restrain state criminal or tax proceedings, as decided by Younger v. Harris, 401 U.S. 37 (1971).

Colorado River abstention is an even narrower exception to the exercise of federal jurisdiction, as it deals not with "weightier" issues of constitutional adjudications or federal-state comity, but with "wise judicial Administration[,]...judicial resources and comprehensive disposition of litigation." 424 U.S. at 817. Thus, circumstances permitting this Court's dismissal are *extremely* limited, and "the balance [must be] weighted in favor of the exercise of

6

P-049

jurisdiction." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1982) ("Moses Cone").

The propriety of Colorado River abstention turns on the evaluation of six factors: "(1) whether the controversy involves a res over which one of the courts has assumed jurisdiction. . . (2) whether the federal forum is less convenient than the other for the parties. . .(3) whether staying or dismissing the federal action will avoid piecemeal litigation. . .(4) the order in which the actions were filed. . .and whether proceedings have advanced more in one forum than the other. . .(5) whether federal law provides the rule of decision. . .and (6) whether the state procedures are adequate to protect the plaintiff's federal rights." Woodford v. Cmty Action Agency of Greene County, Inc., 239 F.3d 517, 522 (2d Cir. 2001) (internal citations omitted).[1]

With respect to these factors, Moses Cone is dispositive. There, petitioner Moses H. Cone Memorial Hospital (the "Hospital") contracted with respondent Mercury Construction Corporation ("Mercury") for the expansion of petitioner's hospital building. 460 U.S. at 4. The agreement provided that all disputes were first to be referred to an independent architectural firm (the "Architects"). Id. If either

---

[1] While the test for Colorado River abstention is known to have six factors, there is also a threshold inquiry that must be undertaken. Courts must determine whether the state and federal actions are indeed concurrent, or "parallel." Sheerbonnet, 17 F.3d at 49-50; Wells Fargo Century Inc. v. Hanakis, 2005 WL 1523788, at *8 (E.D.N.Y. June 28, 2005) (Townes, J.). "Cases are parallel if substantially the same parties are contemporaneously litigating the same issue in different forums." In re Comverse Tech., Inc. Derivative Litig., 2006 WL 3193709, at *2 (E.D.N.Y. Nov. 2, 2006) (Reyes, J.). For the purposes of this motion alone, the Court will assume *arguendo* that the actions are parallel and proceed to evaluating the six Colorado River factors.

7

P-049

party found themselves dissatisfied with a decision of the Architects, they could invoke the agreements broad and binding arbitration clause. Id.

Mercury claimed the Hospital caused delays, increasing the cost of construction, and Mercury then attempted to resolve those claims with the help of the Architects. The Hospital soon refused to continue discussions with Mercury and the Architects, and filed an action in state court requesting, *inter alia*, an *ex parte* injunction forbidding Mercury from initiating arbitration. Id. at 7. Mercury then filed suit in the district court, which stayed the action on account of the fact that "both suits involved the identical issue of the arbitrability of Mercury's claims." Id. at 7. The Court of Appeals for the Fourth Circuit reversed and remanded with instructions to enter an order to arbitrate. Id.

In affirming the Circuit Court, the Supreme Court reviewed the six Colorado River factors and concluded that the exceptional circumstances required to abstain were not present. Id. at 19. In Moses Cone, as here, there was neither a res involved nor an argument to be made that the federal forum was more convenient than the state. Regarding the threat of piecemeal litigation, the court pointed out that, under the Federal Arbitration Act, 9 U.S.C. § 1 et seq., courts are required to compel arbitration upon a showing that an enforceable agreement to arbitrate exists. 9 U.S.C. § 4. If abidance to the FAA results in litigation in multiple fora, that is on account of "Congress's clear intent, in the [FAA] to move parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible," id. at 22, and not the result of the unwise judicial administration that Colorado River

8

abstention seeks to prevent. Where arbitration is concerned, "the relevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement." Id. at 20 (emphasis in original). The Moses Cone court therefore concluded that the District Court's issuance of a stay was "plainly erroneous" and "frustrated the statutory policy of rapid and unobstructed enforcement of arbitration agreements." 460 U.S. at 22-3. Thus, the third factor counsels against abstention.

With respect to Colorado River's fourth factor, which looks at the order in which the actions were filed, this Court is required to compare the amount of progress made in each action, not simply to determine which action was filed first. Here, the State Court Action was not only filed first, but has already granted the State Court Defendants' motion to compel arbitration and denied Plaintiffs' motion to renew its opposition to same. Therefore, the fourth factor favors abstention.

Where the main issue before the court is arbitrability, "federal law provides the rule of decision on the merits," and "the presence of federal law issues must always be a major consideration weighing against surrender [of jurisdiction]." 460 U.S. at 23, 26. Therefore, the fifth Colorado River factor does not support Defendants' argument for abstention. Neither does the final factor (the adequacy of state procedures in protecting Plaintiffs' federal rights) counsel for abstention: "although any possible inadequacy of the state forum to protect the federal plaintiff's rights would provide a strong reason to exercise federal jurisdiction, the adequacy of the state forum does not weigh heavily in favor of dismissal pursuant to Colorado River." King v. Hahn, 885 F. Supp. 95, 98-9 (S.D.N.Y. 1995).

9

P-049

This Court's task is "not to find some substantial reason for the *exercise* of jurisdiction; rather, the task is to ascertain whether there exists exceptional circumstances, the clearest of justifications, that can suffice under Colorado River to justify the *surrender* of that jurisdiction." Moses Cone, 460 U.S. at 25-6 (emphasis in original) (internal citations omitted). With only one factor weighing in favor of abstention, exceptional circumstances were not demonstrated here. Defendants' motion to abstain is denied.

B. *Motion to Compel Arbitration or Stay the Instant Action*

Defendants herein also move this Court for an order compelling arbitration, or, in the alternative, staying the instant action pending arbitration under the FAA. For the reasons stated hereunder, Defendants' motion is granted in part and denied in part.

"Contracts to arbitrate are not to be avoided by allowing one party to ignore the contract and resort to the courts. Such a course could lead to prolonged litigation, one of the very risks the parties, by contracting for arbitration, sought to eliminate." Southland v. Keating, 456 U.S. 1, 7 (1984). Thus, in enacting the FAA, Congress sought to make clear its liberal policy favoring arbitration. See 9 U.S.C. § 2 ("Any written provision in any. . .contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising under such contract. . .shall be valid, irrevocable, and enforceable."); see also Moses Cone, 460 U.S. at 24. In this regard, the instant Court is charged with the duty to compel arbitration upon its

10

P-049

satisfaction "that the making of the agreement for arbitration or the failure to comply therewith is not in issue." See 9 U.S.C. § 4. The FAA provides no discretion to hear a dispute where the existence and validity of an arbitration agreement are shown.

However, "[w]here. . .the issue of arbitrability has already been determined in favor of arbitration, there can be no reason to relitigate in the federal court in order to further a policy favoring what has already been done." Manes Org. v. Standard Dyeing and Finishing Co., 472 F. Supp. 687, 692 (S.D.N.Y. 1979) (staying action under FAA where, as here, arbitrability argued and re-argued in state court because state court decision deemed conclusive of issue); see also Becker v. Silverman, 638 F. Supp. 193, 197 (S.D.N.Y. 1986) (state law claims already directed to arbitration dismissed by district court where "plaintiff was displeased with the state court's decision directing the parties to arbitrate, and therefore brought [] action in federal court, hoping to get a different decision"). Therefore, res judicata applies in this instance to prevent Plaintiffs from bringing all claims set forth in the instant Complaint.[2] See, e.g., Moses Cone, 460 U.S. at 10 (where state court action dealing with arbitration was pending at the time federal action filed, state court's judgment on issue of arbitrability would be considered res judicata).

That Plaintiffs' Complaint alleges RICO claims not styled as such in the State Court Complaint does not alter this Court's conclusion that Plaintiffs'

---

[2] Incidentally, Plaintiffs admit they are precluded from contesting the arbitrability of their state law claims. (Pls.' Mot. in Opp. at 17 fn. 13.)

11

P-049

Complaint must be dismissed. Manes, 472 F. Supp. at 689 ("It is substance and not form that governs where res judicata is argued, and repetitive litigation is not to be allowed simply because the claim bears new garb.") (internal citations omitted). Both Plaintiffs' State Court Complaint and federal Complaint allege a pattern of calculated and fraudulent conduct resulting in breaches of contracts containing arbitration clauses in force during the relevant disputes. While Plaintiffs present some new information in their federal Complaint -- which, they claim, alerted them to the existence of potential RICO claims -- that information did not create the basis for RICO claims where none existed. In RICO terms, the new allegations merely expand the scope and reach of the alleged RICO enterprise, alleging wrongdoing on a nationwide scale by Defendants. However, Plaintiffs were aware, as of at least the filing of the State Court Complaint, of what they called a "pattern of deception" modeled to "justify outlandish compensation" by "depriving benefits conferred upon" Plaintiffs via contract.[3] Hence, the "pattern of racketeering" alleged in the instant Complaint relies, part and parcel, on issues relating to the contracts between the various parties. Even if Plaintiffs had learned of new causes of action not maintainable with only the information available to them at the time of the filing of the State Court Complaint – a finding this Court does not make – they would still have to show why this Court would not be required to direct arbitration under the agreements. 9 U.S.C. § 4; see also Shearson/American Express v. McMahon, 482

---

[3] As stated in § I of this opinion, Plaintiffs' State Court Complaint alleged roles played by each Defendant to this action.

12

P-049

U.S. 220, 242 (1987) ("We find no basis for concluding that Congress intended to prevent enforcement of agreements to arbitrate RICO Claims."). Thus, Plaintiffs' argument that dismissal is inappropriate on account of "new" information obtained is unavailing.

Nor does the presence of new defendants affect the Court's conclusion that Plaintiffs must arbitrate the instant dispute. "[A] signatory [to an agreement to arbitrate] is estopped from avoiding arbitration with a non-signatory 'when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.'" Chocktaw Generation Ltd. Partnership v. American Home Assurance Co., 271 F.3d 403, 404 (2001) (citing Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 98 (2d Cir. 1999) and Thomson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773, 779 (2d Cir. 1995)). Here, Plaintiffs cannot doubt that the claims against the Additional Defendants are "intimately founded in and intertwined with the underlying contract obligations." Id. at 406 (internal citations omitted). The State Court Complaint accuses UHG, then a non-party, of allowing and/or encouraging the wrongs complained of by Plaintiffs. (See, e.g., State Court Complaint ¶¶ 2, 11, 12, 48.) Indeed, while the State Court Complaint did not name an identical set of defendants, in it Plaintiffs alleged wrongs committed by all of the instant defendants; those wrongs collectively served to further the business practices about which Plaintiffs complain in both their state and federal actions. (Compare State Court Complaint ¶¶ 17, 35, 51-2, 53 with Complaint ¶¶ 38, 44-46, 55-57.)

13

Plaintiffs cannot now argue that the claims against some of those defendants are not intertwined with those against the others. Therefore, to the extent the state court's order does not conclusively compel arbitration of all disputes in this case as against both the State Court Defendants and the Additional Defendants, this Court must do so, pursuant to 9 U.S.C. § 4, given the broad arbitration clauses at issue, as well as the generous construction of those clauses that is required under the FAA.

C. *Amicus Appearances*

"District Courts have broad discretion in deciding whether to accept *amicus* briefs." Concerned Area Residents for the Environ. v. Southview Farm, 834 F. Supp. 1410, 1413 (W.D.N.Y. 1993). Additionally, the circumstances under which an *amicus* brief is considered "desirable" are limited:

> An *amicus* brief should normally be allowed when a party is not represented competently or is not represented at all, when the *amicus* has an interest in some other case that may be affected by the decision in the present case. . .or when the *amicus* has unique information or perspective that can help the court beyond the help that lawyers for the parties are able to provide. Otherwise, leave to file an *amicus* brief should be denied.

Citizens Against Casino Gambling in Erie County v. Kempthorne, 471 F. Supp. 2d 295 (W.D.N.Y. 2007) (quoting Ryan v. Commodity Futures Trading Comm'n, 125 F.3d 1062-3 (7th Cir. 1997) (Posner, J.)). None of the amicus briefs satisfy this standard, or even site case law relevant to the legal issues brought in Defendants' motions. As such, the Court denies the Amicus Motions. (Docket Nos. 25, 29, 50).

14

P-049

D. *Motion to Intervene*

Though the docket reflects that United Policyholders have filed a motion to intervene pursuant to Rule 24(a) of the Federal Rules of Civil Procedure, (Docket No. 27), that motion makes mention of neither facts nor law in support of a Rule 24(a) Intervention of Right and merely directs the Court to its amicus brief. As such, it is denied.

### III. Conclusion

Although the extremely limited doctrine of Colorado River abstention is not applicable to the instant action, this Court is nevertheless required to dismiss Plaintiffs' Complaint as precluded by the state court order compelling arbitration. Plaintiffs are granted leave to re-open this action, should any Defendant not subject to the state court action fail to arbitrate. The Clerk of the Court is directed to close the case.

SO ORDERED.

DATED: October 21, 2008
Brooklyn, New York

s/Hon. Sterling Johnson, Jr.
_____
Sterling Johnson, Jr, U.S.D.J.

15